IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

KEITH PLATERO and RENA PLATERO,

        Plaintiffs,

v.                                         CIV. No. 05-398 LH/RHS

THE UNITED STATES OF AMERICA,

        Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (Docket No. 29).  The Court, having considered the motion, the memoranda of the parties, and the applicable law, and otherwise being fully advised, finds that Defendant's motion is hereby **granted in part and denied in part.**  Counts 1, 2, 4 and 5 are dismissed, with Count 3, Common-Law Trespass remaining as the only claim in the case.

**Procedural Background**

       In their Complaint for Money Damages (Civil Rights), Plaintiffs allege that Officer Betonie, a Navajo Nation police officer, unlawfully entered their residence, without a warrant, to conduct a search.  They allege that Officer Betonie entered their home, while on duty and wearing the uniform of the Navajo Nation Police Department, and in the course and scope of his employment, and proceeded to act in a tortious manner.

       Plaintiffs brought five Counts against the United States, pursuant to the Federal Tort Claims

Act ("FTCA").[1]  Counts 1-3 and 5 allege[2]:  assault and battery, false imprisonment, common-law trespass, and negligence, respectively.

As a basis for its motion, Defendant states that Plaintiffs' Complaint and causes of action should be dismissed for lack of subject matter jurisdiction because:  (1) there is no applicable waiver of sovereign immunity; and,  (2) all of the claims are barred by the Federal Tort Claims Act's intentional tort exception, 28 U.S.C. § 2680(h).

**Procedural Posture**

Defendant has styled its motion as one to dismiss, or alternatively, for summary judgment. Preliminarily, the Court notes that

> [w]hen reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations.  A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1).  In such instances, a court's references to evidence outside the pleadings does not convert the motion to a Rule 56 motion.
>
> However, a court is required to convert a Rule 12(b)(1) motion to dismiss into a Rule 12(b)(6) motion or a Rule 56 summary judgment motion when resolution of the jurisdictional question is intertwined with the merits of the case.  The jurisdictional question is intertwined with the merits of the case if subject matter jurisdiction is dependent on the same statute which provides the substantive claim in the case.

*Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995)(citations omitted);  *see also Sizova v. National Institute of Standards & Technology*, 282 F.3d 1320, 1324-25 (10th Cir. 2002).  In this case, both the subject matter jurisdiction of this Court and Plaintiffs' substantive claims depend on the

---

[1]  28 U.S.C. §§ 1346(b) and 2671, *et seq.*

[2]  Count 4 is no longer before the Court for consideration.  In their reply brief, Plaintiffs agreed to dismiss this count, a claim for violations of the Indian Civil Rights Act and the United States Constitution.  (Docket No. 31 at 1-2).

provisions of the Federal Tort Claims Act.  Resolution of the jurisdictional issues will require the Court to look beyond the allegations of the pleadings.  Thus, Defendant's motion will be converted to, and analyzed as, a motion for summary judgment pursuant to FED.R.CIV.P. 56.


**Undisputed Facts**

Defendant's memorandum in support of its motion, contains a Statement of Undisputed Material Facts ("SUMF"), to which, for purposes of the motion, Plaintiffs make no exception.  The relevant material facts are these:  On June 13, 2003, Officer Betonie was a police officer with the Crownpoint Police District for the Navajo Department of Law Enforcement.  He did not hold a Bureau of Indian Affairs (BIA) commission.  SUMF ¶ 1.  On the day in question, Officer Betonie went to the house of Plaintiff Keith Platero, in search of a suspect in a case that did not in any way involve Plaintiffs.  *Id*., ¶¶ 7-10.  Officer Betonie knocked on the door of Plaintiffs' residence, and announced his presence.  *Id*., ¶ 10.  Officer Betonie entered the house and first encountered Rena Platero.  He thought that she was intoxicated and threatening him, so he cuffed her.  *Id*., ¶ 11.  Ms. Platero's husband entered the room and an altercation ensued between Mr. Platero and Officer Betonie.  Officer Betonie was of the opinion that Mr. Platero was intoxicated.  *Id*., ¶ 12.  There were children in the residence during this encounter.  *Id*., ¶ 13.

The Plateros, along with the suspect, Emerson John, were taken to the police station and booked.  *Id*., ¶ 14.  Ms. Platero was charged with three counts of criminal behavior: resisting/interfering with police, aggravated assault on a police officer, and endangering the welfare of a minor.  *Id*., ¶ 15.  Mr. Platero was charged with three counts of criminal behavior: resisting/interfering with police, neglect, and endangering the welfare of a minor. *Id*., ¶ 16.

At the time of the above incident, Officer Betonie was enforcing tribal law. *Id.*, ¶ 18; Betonie Depo. at 7, 8, 25, 27, 28.   In the fiscal year 2003, the Navajo Nation Department of Law Enforcement was funded pursuant to a Pub.L. 93-638 contract between the Navajo Nation and the United States Department of Interior, Bureau of Indian Affairs ("BIA").  SUMF, ¶ 19.[3]

## Assault, Battery and False Imprisonment Claims

It is well settled that the United States, as a sovereign, is immune from suit except to the extent that it waives its sovereign immunity and unless it consents to be sued.  *Smith v. United States*, 507 U.S. 197, 200 (1993).  While the United States has waived its sovereign immunity under the FTCA with respect to money damages for

> personal injury . . . caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred,

28 U.S.C. § 1346(b)(1), this waiver does not apply to "[a]ny claim arising out of assault, battery [or] false imprisonment . . . ," unless the acts or omissions are those of  "investigative or law enforcement officers."  28 U.S.C. § 2680(h).  In other words, sovereign immunity is waived for the ten intentional tort exceptions listed in § 2680(h), when committed by law enforcement officers acting within the scope of their employment.  The question to be decided here is whether Officer Betonie was a federal law enforcement officer when he committed the acts alleged in the Complaint.  Under the language

_____

[3] Paragraphs 19 and 20 in Defendant's Statement of Undisputed Material Facts are numbered incorrectly as 18 and 19, instead of 19 and 20.  The citations to these paragraphs in this opinion are the corrected numbers.

in § 2680(h), Plaintiffs' FTCA claims can proceed only if the answer is yes.[4]  The term "law enforcement officer" is defined by 28 U.S.C. 2680(h) as "any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law."

As mentioned above, it is undisputed in this matter that, during the relevant time frame, the Navajo Nation Department of Law Enforcement was funded pursuant to a Public Law 93-638 contract between the Navajo Nation and the BIA.  The objective behind Public Law 93-638, enacted in 1975 as the Indian Self-Determination and Education Assistance Act ("Self-Determination Act"), was to increase tribal participation in the management of federal Indian programs and activities.  *See* 25 U.S.C. §§ 450, *et seq.*  The Self-Determination Act allowed tribes to enter into contracts with the BIA in the Department of the Interior ("DOI") to administer programs or services that would otherwise have been administered by the federal government.  The Crownpoint Police District for the Navajo Department of Law Enforcement was funded, pursuant to such a contract.

Because the Navajo Department of Law Enforcement was funded in 2003 under a Public Law 93-638 contract, its officers were federal employees for purposes of the FTCA, and their actions could subject the United States to liability under certain circumstances.  *See* 25 U.S.C. § 450f(d).  Nothing in the Self-Determination Act, or in relevant case law, suggests that the mere existence of a Public Law 93-638 contract between BIA and a tribe, providing for law enforcement services, automatically confers federal law enforcement authority upon the officers in tribal police departments, however.  *Trujillo v. United States*, 313 F.Supp.2d 1146, 1150 (D.N.M. 2003).  Absent the power

---

[4]  The applicability of 28 U.S.C. § 2680(h), the intentional tort exception, is a question of subject matter jurisdiction.  "Sovereign immunity is jurisdictional in nature."  *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994).

to enforce federal law, tribal officers are not federal investigative or law enforcement officers.  *See,*

*Dry v. United States*, 235 F.2d 1249, 1257 (10th Cir. 2000)(although tribal officers had D.O.I.

employee status, they acted with tribal law authority, and not as federal law enforcement officers,

when acting under a Choctaw/BIA contract under the Indian Law Enforcement Act).[5]  *See also*

*Morsette v. United States*, 26 Ind.L.Rep. 3052 (Sept. 17, 1998)(holding that tribal officers, while

covered by a self-determination contract and considered federal employees for purposes of FTCA,

were not federal law enforcement officers under § 2680(h), absent a showing that they performed

federal law enforcement duties, were cross deputized, or were called upon to perform in emergencies

to enforce federal law).  The answer to whether Officer Betonie was a "law enforcement officer"

under § 2680(h) will depend upon whether or not he was authorized to perform federal law

enforcement duties at the time of the incident in question.

      Defendant's Exhibit E contains a copy of the relevant law enforcement contract, dated May

22, 2003.  It also contains the Statement of Work[6], referred to in Defendant's Statement of

Undisputed Material Facts.  This section states:

> the Contractor shall perform police law enforcement activities, as noted in the Indian Law Enforcement Reform Act, 25 U.S.C. § 2801, *et seq.*, within Navajo Indian Country, as defined in 18 U.S.C. 1151 . . . . These services shall include: . . . . B.  Enforcing applicable Navajo Nation, federal and state laws and ordinances. . . . F.  Responding to citizen's complaints or other request for law enforcement services within the service area. . . . .

---

[5]  At page 4 of their brief, Plaintiffs argue that Officer Betonie's conduct differed materially from that under examination in the *Dry* case, and that the *Dry* case is accordingly distinguishable.  Plaintiffs argue that Officer Betonie was "a tribal officer enforcing tribal law," but that he did so under the P.O. 93-638 "contract with the Secretary, acting under the statutory authority of the Secretary, not the Navajo Tribe."  As discussed below, there is no basis to conclude that Officer Betonie had been granted the power to enforce federal law.

[6]  This Statement of Work is incorporated by reference to the Annual Funding Agreement, which was incorporated by reference to the law enforcement contract.

Paragraph 104 of this Statement of Work states:

> Certification as Federal Law Enforcement Officers.  The Bureau shall commission any law enforcement officer meeting the personnel, qualifications and training provisions of this contract as a Federal Law Enforcement Officer.

Although the scope of work for the contract between the Navajo Nation and the BIA mentions the law enforcement activities, as noted in the Indian Law Enforcement Reform Act, and includes enforcement of federal and state law, this language, in and of itself, does not transform Officer Betonie into a federal law enforcement officer, any more than it would transform him into a state law enforcement officer. *See Locke v. United States*, 215 F.Supp.2d 1033, 1038 (D.S.D. 2002), *aff'd*, 2003 WL 21212167 (8th Cir. 2003).

As noted in the *Trujillo* case, a self-determination contract between a tribe and the BIA does not automatically confer federal law enforcement authority upon each officer in tribal police departments. *Trujillo v. United States*, 313 F.Supp.2d at 1150.  The status of being a "federal law enforcement officer" is not automatically granted, but is determined on a case-by-case basis, 25 C.F.R. § 12.21, after a review by the BIA as to whether the officer in question meets the "personnel, qualifications and training provisions of th[e] contract as a Federal Law Enforcement Officer." Statement of Work, ¶ 104.  It is undisputed that Officer Betonie was not commissioned as a "Federal Law Enforcement Officer," as mentioned in Paragraph 104 of the Statement of Work.   SUMF ¶ 1; Betonie Depo. at 7.  BIA law enforcement officers are commissioned under the authority established by 25 U.S.C. § 2803.  Under 25 C.F.R. § 12.21, the BIA is authorized to issue special law enforcement officer ("SLEO") commissions to qualified full-time certified tribal law enforcement officers.  An SLEO commission authorizes a deputized tribal police officer to assist the BIA "in enforcing applicable Federal criminal statutes, including Federal hunting and fishing regulations, in

Indian country." 25 C.F.R. § 12.21. Unless the BIA issues a SLEO commission to a tribal officer, the officer is not authorized by law to enforce federal law, and is not a "federal investigative or law enforcement officer" within the meaning of § 2680(h). In this instance, Officer Betonie was not commissioned by the BIA (Betonie Depo., p. 7), let alone an SLEO. Officer Betonie testified at his deposition that, in this position while working for the Navajo Department of Law Enforcement, he was enforcing tribal law. (Betonie Depo., p. 8). The Court is left with the unmistakable conclusion that Officer Betonie was not authorized by law to make arrests for violations of federal law, that he was acting pursuant to tribal rather than federal authority, and that he did not meet the definition of a "law enforcement officer", as defined by § 2680(h).

The Court notes that Plaintiffs argue that it is impossible to determine when an officer is enforcing tribal or federal law, because "[v]irtually every federal major crime will have tribal lesser included offenses; tribal officers, though acting pursuant to a P.L. 93-638 contract under which they may enforce both tribal and federal law, generally arrest and charge initially under tribal code offenses notwithstanding the clear existence of a federal offense." (Pltfs' Brief at 7). There is no genuine issue of material fact on this point, as Officer Betonie himself was quite clear that he was enforcing tribal law at the time of the incident in question. Furthermore, this situation does not operate to change the status of non-commissioned officers, such as Officer Betonie, to that of being a federal law enforcement officer for FTCA purposes.

Plaintiffs also argue that the Indian Law Enforcement Reform Act ("ILERA"), 25 U.S.C. § 2801, *et seq*, confers law enforcement officer status on tribal officers. The Court agrees with the reasoning of *Dry v. United States*, 235 F.3d at 1258, and concludes that this argument is unavailing.

Plaintiffs do not offer any factual evidence that conflicts with Defendant's Statement of

8

Undisputed Material Facts, or which rebuts evidence that indicates that Officer Betonie was not performing duties of a federal law enforcement officer at the time in question. Nor do Plaintiffs offer evidence to suggest that Officer Betonie was "empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law," in order to bring his allegedly tortious actions within the purview of § 2680(h). The Court must, therefore, accept Defendant's material facts and evidence as true. *See Locke v. United States*, 215 F.Supp.2d at 1038 (intentional tort exception to FTCA precluded claim where plaintiff did not challenge evidence to the effect that tribal officer did not receive necessary certification, enforced only tribal laws or ordinances, and was not a federal law enforcement officer).

In conclusion, Plaintiffs have failed to put forth any facts that establish that Officer Betonie was anything other than a tribal police officer. Based upon the record before the Court, Plaintiffs have failed to show that there is a genuine issue as to any material fact, and the Court must conclude that Defendant is entitled to judgment as a matter of law, insofar as the claims for assault, battery, and false imprisonment are concerned. Fed.R.Civ.P. 56. They have failed to meet their burden of proof as to this issue of jurisdiction, and failed to provide the Court with factual evidence for the premise that Officer Betonie was acting as a federal law enforcement officer at the time of the alleged intentional torts of assault, battery and false imprisonment. Officer Betonie is, thus, not excepted from the so-called intentional torts exception to the FTCA, 28 U.S.C. § 2680(h). He was not an officer of the United States. Therefore, the federal government is not liable as a matter of law for the intentional torts of assault, battery and false imprisonment. Given the immunity of the United States for liability for these claims, they must be dismissed.

**Negligence Claim**

Plaintiffs' count for negligence, Count 5, alleges that, in performing his duties as a law enforcement officer with the Navajo Nation Police Department, Officer Betonie owed Plaintiffs a duty to exercise ordinary care; that he breached this duty; and that Plaintiffs suffered injuries and damages as a result of this breach of duty.

Plaintiffs cannot turn an intentional tort into negligent conduct by the turn of a phrase – by merely labeling the conduct as negligence. The nature of Plaintiffs' claims are properly determined by focusing, not on the label Plaintiffs use, but on the conduct upon which the allegations are premised. *Benavidez v. United States*, 177 F.3d 927, 931 (10th Cir. 1999); *see also Trujillo v. United States*, 313 F.Supp.2d at 1152. This count for negligence is based upon Officer Betonie's performance of his duties as a law enforcement officer, which has otherwise been characterized by Plaintiffs throughout the Complaint as tortious conduct. For example, Paragraph 13 of the Complaint alleges that Officer Betonie knew there was no valid court order in place and that forcible entry was not justified by law or consent. Paragraphs 16 and 18 describe intentional, forceful and injurious actions by Officer Betonie. These are paragraphs describing Officer Betonie's performance on the day in question. This is not the type of language upon which negligence causes of action are based. Because the conduct  underlying this "negligence" claim clearly arises out of Plaintiffs' claims for intentional torts, it is barred by 28 U.S.C. § 2680(h). "Section 2680(h) does not merely bar claims for assault and battery; in sweeping language it excludes any claim *arising out of* assault or battery." *United States v. Shearer*, 473 U.S. 52, 55 (1985)(emphasis in original).

**Trespass Claim**

Count 3 of the Complaint is for common-law trespass and alleges that Officer Betonie's entry into Plaintiffs' private property, was knowingly done without permission, and constituted trespass. For the reasons that follow, the Court concludes that Plaintiffs have stated a valid claim for trespass for which this Court possesses subject matter jurisdiction, and that Defendant's motion will be denied, insofar as this one claim is concerned.

When Congress enacted the FTCA, it waived sovereign immunity of the United States for certain torts committed by federal employees. *See* 28 U.S.C. § 1346(b); *F.D.I.C. v. Meyer*, 510 U.S. at 475. Congress did not waive sovereign immunity as to all types of torts. It was careful to except several classes of tort claims, in 28 U.S.C. § 2680, for which the United States could not be sued, assuming that the torts were committed by governmental employees who were not federal law enforcement officers.

In this opinion, the Court has concluded that, while Officer Betonie was a governmental employee, he was not a federal law enforcement officer, at the time in question. This means that Defendant is immune for the types of torts enumerated in § 2680(h). The United States incorrectly characterizes "trespass" as one of the intentional torts for which Congress excepted the FTCA's broad waiver of sovereign immunity. In fact, "trespass" is not one of the enunciated exceptions contained in § 2680. Congress intended the government to be liable for trespasses. *United States v. Artieri*, 491 F.2d 440, 447 (2d Cir. 1974); *Holmes Herefords, Inc. v. United States*, 753 F.Supp. 901 (D.Wyo. 1990).

New Mexico courts adhere to the rule that law enforcement officers, in executing a search warrant, are required to give notice of their authority and purpose, and must wait to be admitted or

11

denied permission to enter prior to police entry into the premises sought to be searched.  *State v. Williams*, 114 N.M. 485, 488 (Ct. App. 1992).  For the purpose of executing a search warrant, failure to comply with these "knock and announce" requirements is permitted only where exigent circumstances are found to exist.  *State v. Baca*, 87 NM 12 (Ct. App. 1974).  Here, Officer Betonie had no search or arrest warrant, which might help to justify a "knock and announce" entry. Defendant's own Statement of Undisputed Material Facts, at paragraphs 10 and 11, contains these two sentences, relating to Officer Betonie's entry of Plaintiffs' residence:  "Officer Betonie knocked on the door of Plaintiffs' residence, and announced his presence.  Officer Betonie entered the house . . . ."  There is no indication that Officer Betonie had permission to enter the building, nor do the facts in the Statement of Undisputed Material Facts indicate that he had legal justification to do so. The facts before the Court indicate that entry under these circumstances might have been trespass.

**WHEREFORE,** for the reasons stated herein, Defendant's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (Docket No. 29), is hereby **granted in part and denied in part.**  Counts 1, 2, 4 and 5 are dismissed, with Count 3, Common-Law Trespass, remaining as the only claim in the case.

**IT IS SO ORDERED.**

_____
**SENIOR UNITED STATES DISTRICT JUDGE**